FRANK BRUCE, APPELLANT, v. GROVER C. ALBAUGH ET AL., APPELLEES.

FILED JANUARY 26, 1922. No. 21623.

1. **Deeds:** UNDUE INFLUENCE. The undue influence which will avoid a deed is an unlawful or fraudulent influence which controls the will of the grantor. The affection, confidence and gratitude of a parent toward a child or grandchild, or other relatives, which inspires the gift, is a natural and lawful influence, and will not render it voidable unless this influence has been so used as to confuse the judgment and control the will of the donor.

2. ——: DELIVERY. "The delivery of an instrument is a question of fact to be determined by ascertaining the intention of the parties thereto." *Home Fire Ins. Co. v. Collins*, 61 Neb. 198.

3. ——: ——: ACCEPTANCE. The recording of a deed by the grantor is evidence both of delivery and acceptance, if the conveyance is beneficial to the grantee.

APPEAL from the district court for Pawnee county: JOHN B. RAPER, JUDGE. *Affirmed.*

*John C. Dort* and *W. J. Davidson,* for appellant.

*Barton & Barton,* contra.

Heard before MORRISSEY, C. J., ROSE, ALDRICH and FLANSBURG, JJ., GRAVES and WELCH, District Judges.

GRAVES, District Judge.

This is an appeal from the finding and decree of the

district court for Pawnee county, dismissing the petition of the plaintiff and appellant and quieting title in Elmer L. Albaugh to the N.E.¼ of the N.W.¼, and in Grover C. Albaugh to the N.W.¼ of the N.W.¼, of section 1, township 1, range 12, in said county, in the state of Nebraska, and decreeing that the mortgage of Margaret Wishart Miller, executed by Grover C. Albaugh, was a first lien on the lands described therein. .

The action was in the nature of a bill in equity instituted by plaintiff to set aside certain deeds of warranty executed by Margaret Lowrie on April 20, 1909, and duly recorded on April 22, 1909, conveying title to the respective parcels of land to said Elmer L. and Grover C. Albaugh, who were grandchildren of Mrs. Lowrie, the plaintiff being a son of Mrs. Lowrie by her first husband, The action was commenced in April, 1917, and based on alleged fraud and undue influence of one George W. Albaugh, a son-in-law, over said Margaret Lowrie, and that the deeds to said Elmer L. and Grover C. Albaugh were never delivered.

The evidence discloses that Margaret Lowrie, two sons by a former marriage, and her husband, came to Pawnee county and settled upon the north half of the north half of section 1, township 1, range 12, as a homestead, about the year 1867; that the plaintiff, Frank Bruce, and a brother two years older, then boys 13 and 15 years of age, respectively, lived with their parents and industriously improved and tilled said land; that, later, two daughters were born to Mr. and Mrs. Lowrie; that the elder of the Bruce boys died at the age of 22, unmarried; that the plaintiff married in about the year 1878, and rented the homestead, living with the family, and so continued to live until the year 1890, at which time George W. Albaugh married Janie Lowrie, and also moved in with the Lowrie family. Troubles arose between Mr. Bruce and Mr. Albaugh, resulting in Mr. Bruce renting a farm in the neighborhood, and a year or two later moving permanently to the state of Oklahoma.

Sometime in March, 1883, John Lowrie and his wife, Margaret Lowrie, separated, at which time John Lowrie conveyed the land in controversy, and the N.W.¼ of the N.E.¼ of said section 1 to his wife, Margaret, retaining the N.E.¼ of the N.E.¼ of said section 1. Afterwards Margaret Lowrie purchased the S.W.¼ of the N.E.¼ of said section 1. In June, 1903, Margaret Lowrie conveyed to George W. Albaugh the W.½ of the N.E.¼ of said section 1, for the consideration of $1,600, taking a mortgage back for the sum of $1,000, which mortgage was released of record January 16, 1906, and on the same date George W. Albaugh executed a mortgage to Margaret Lowrie on the N.W.¼ of the N.E.¼ of said section 1, for the sum of $500, which mortgage was released on March 5, 1907, and on the same day George W. Albaugh executed a mortgage to Margaret Lowrie, on the last above-described land, in the sum of $1,000, which was released on the 2d day of December, 1912.

To George W. Albaugh and wife, Janie, were born two sons, September 8, 1892, Grover C. Albaugh, and in April, 1903, Elmer L. Albaugh, and on the 22d day of May, 1903, Janie Albaugh died.

On March 14, 1916, Grover C. Albaugh, then unmarried, executed a mortgage to secure the sum of $1,500 to defendant, Margaret Wishart Miller, upon the N.W.¼ of the N.W.¼ of said section 1, which mortgage was duly recorded and is in full force and effect. It is stipulated that this mortgage was taken by Mrs. Miller without notice or knowledge of the claims of Frank Bruce on said lands.

Plaintiff alleges that the alleged fraud was not discovered until September 15, 1916. It will be observed that all of the mortgages executed by George W. Albaugh to Margaret Lowrie and released, as disclosed by the record, conveyed all or a part of the W.½ of the N.E.¼ of said section 1, and not the land in controversy, the title to which was retained by Margaret Lowrie until she executed the deeds in controversy on April 20, 1909. It

is stipulated by the parties to this suit that Margaret Lowrie had and held the contract with the commissioners for the care of the poor of Pawnee county from 1884 to and inclusive of the year 1912. The plaintiff, Frank Bruce, was born in about 1854, as he was 13 years of age when the family moved to the homestead, and evidently arrived at the age of 21 years in 1875, and worked without remuneration on the farm, for his mother, for three years, until his marriage in 1878, after which he rented the farm of his mother, paying as rent therefor "one-third of the grain and hay," as stated in his testimony, until the trouble with George W. Albaugh in 1890, at which time he testifies his mother told him, "I have rented the place to George Albaugh and I would have to go."

This case is tried *de novo,* and the writer has carefully read the testimony of all the witnesses. The record discloses that after October, 1890, George W. Albaugh and wife, Janie, continued to live with Margaret Lowrie up to the date of Janie Albaugh's death in May, 1903, and the defendant Grover C. Albaugh was born at the home of Mrs. Lowrie on September 8, 1892, and Elmer L. in April, 1903; their mother died May 22, 1903, and after that time George W. Albaugh and his two boys continued to operate the farm and live at the home of Margaret Lowrie. Mr. Albaugh married a second time in 1905 and continued to live with Mrs. Lowrie and the boys until his death on the 7th day of February, 1916. Mrs. Lowrie died in September following. Their relations were agreeable and harmonious except an episode related by the witness Ida Jones.

The witness for the plaintiff, John Marshall, referring to a conversation with George Albaugh with reference to improvements he was making, testified: "I said, 'George, I'd hate to be putting improvements here; when the old lady is gone, Bruce will come in.' " To which George Albaugh is supposed to have replied: "It will be damned little he will get out of it." Referring to a conversation

had with Margaret Lowrie, some two or three years after the death of her daughter Janie: "She told me she was going to deed one forty to Grover, the other forty to Elmer, and the thousand dollars she got from George should go to Frank; that would make it, she thought, as near equal as she could divide it." To the same effect is plaintiff's witness, Mary Storant, a county charge, who lived with Mrs. Lowrie from 1884 until her death in September, 1916, and she further testified that on two or three occasions in the latter years of her life she found Margaret Lowrie in her room crying, and when she asked her what the trouble was, she answered, "She could not tell me." The same witness, recalled by plaintiff, questioned by the court: "Q. Mrs. Storant, did you ever hear any quarrel between George Albaugh and Mrs. Lowrie? A. No. Q. Did you ever hear George use any rough or profane language toward Mrs. Lowrie, swear at her? A. Not when I was around. Q. Well, you never heard it, that is what I am getting at? A. No."

Many of the witnesses for the defense testified of hearing Margaret Lowrie at different times, before and after the execution of the deeds, say that she intended to deed "or had deeded the forty on which the buildings were located to Elmer, and the other forty to Grover." And all the witnesses, without exception, who testify on that subject, assert that Margaret Lowrie had a good active mind and alert, and conducted her own business without assistance or advice, and was not easily influenced. To the same effect was the witness, Arthur H. Pelton, cashier of the State Bank of Dubois, who had business relations with Margaret Lowrie many years. He said, on the date of the execution of the deeds in controversy, that she came to the private office of the bank alone, and told him what she desired to do with the land and he made out the deeds, exhibits 8 and 9; she signed and acknowledged the deeds, and took them to the lobby of the bank, where she delivered them to George W.

Albaugh; that Mr. Albaugh delivered the deeds, with re-cording fees, to the witness, with directions to have them recorded; that in pursuance of such directions he had the instruments recorded, and, when returned from the recorder's office, placed the deeds with the private papers of George W. Albaugh, as directed.

In view of the fact that Margaret Lowrie, long before the deeds were executed, told John Marshall, Mary Storant, Ola Albaugh, and R. H. Church, that she intended to make the conveyances, and that during the seven years following the execution thereof, and before her death, she related the fact to witnesses Henry Hunzeker, Louis Kaiserman, and Carrie Albaugh, it leaves no room for doubt that delivery of the deeds, as above related by the witness Pelton, was in harmony with the purpose and intent of Mrs. Lowrie to convey the title to her grandsons.

"The delivery of an instrument is a question of fact to be determined by ascertaining the intention of the parties thereto." *Home Fire Ins. Co. v. Collins,* 61 Neb. 198.

The question of mental capacity is not in this case. The plaintiff testifies that his mother was managing her own business and was able to get around and look after it until the latter two years of her life.

The only remaining question is: Did George W. Albaugh have such influence with his mother-in-law as to cause her, contrary to her wish and will, to convey the property in question to his sons? There is no direct testimony that he ever tried so to do. The circumstances were favorable, as they lived together for about 25 years, and no doubt he was unfriendly toward plaintiff. There is disclosed a close confidential and friendly relationship between Mrs. Lowrie and her son-in-law. She had previously conveyed to him the other eighty for about one-third of its value. Her motive for so doing is not disclosed. The $1,000 which Mrs. Lowrie said she intended plaintiff should have, at the same time, and to the same persons she said she would deed these lands

to her grandsons, for some unexplained reason was not fulfilled. Whether she changed her mind or some other reason intervened is not disclosed. There is no evidence that Mrs. Lowrie had ever directed George W. Albaugh or any other person to make such payment or made provision therefor. Notwithstanding this omission, we are convinced that the natural love and affection for her two grandsons, whom she had mothered since the death of her daughter Janie, was the moving cause for the execution of the deeds, and clearly her purpose and desire.

"Where the evidence clearly discloses competency and perfect freedom on the part of a grantor in making a deed, the court will not be justified in setting it aside." *Hacker v. Hoover*, 89 Neb. 317. *Brugman v. Brugman*, 93 Neb. 408; 18 C. J. 240.

It follows that the decree of the district court is right and is

AFFIRMED.