JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, APPELLANT, V. WALTER G. HARROLD ET AL., APPELLEES.

FILED DECEMBER 6, 1935. No. 29388.

*Wells, Martin, Lane & Offutt* and *Miller & Blackledge*, for appellant.

*N. P. McDonald, E. L. Randall, H. M. Wilson* and *H. Halderson, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and MUNDAY, District Judge.

Goss, C. J.

In this suit to foreclose a mortgage the trial court decreed that Henry Harrold, the maker, was incompetent when he executed the notes and mortgage. The decree allowed plaintiff a lien for taxes, but canceled the mortgage. Plaintiff appealed from the decree as to the mortgage. Defendants did not cross appeal.

Henry Harrold, owner of 160 acres, and his wife, Eliza Harrold, on July 12, 1929, mortgaged the farm for $2,000 to the Omaha National Company, which sold and assigned the note and mortgage to plaintiff. Desiring to increase the loan, the Harrolds, on January 4, 1930, made another note and mortgage on the same land for $4,750 in favor of the Omaha National Company. This mortgage was duly assigned to plaintiff and the $2,000 mortgage was released. Plaintiff sought foreclosure of the $4,750 mortgage. Confronted by pleas in the answers of defendants that for more than a year before the date of the last named mortgage Henry Harrold was incompetent to understand the terms of any contract, plaintiff's amended petition set up the $2,000 mortgage and asked, if the court found against it on the larger mortgage, that it be allowed a lien, by subrogation, on account of the $2,000 mortgage.

The answers set up not only the plea we have sketched, but alleged, briefly stated, that the consideration was never paid or traced to Henry Harrold. In their brief the appellees say: "Any other issues are only incidental to this main issue, which is as follows: Was Henry Harrold incompetent at the time of the execution of the mortgages in question?"

It will aid if we state, in advance, the applicable rules: (1) Where it is sought to cancel an instrument for the want of mental capacity of the grantor to make it, the burden of proof is on the one who alleges the mental incapacity. (2) In determining the mental capacity of the grantor to execute an instrument, if it clearly appears that when the instrument was executed the grantor had the capacity to understand what he was doing, knew the

nature and extent of the property dealt with and what he proposed to do with it, and had the capacity to decide intelligently whether or not he intended to make the conveyance, it cannot be said that he was incompetent to execute the instrument. *Brugman v. Brugman,* 93 Neb. 408, 140 N. W. 781; *Keedick v. Brogan,* 116 Neb. 339, 217 N. W. 583; *Broeker v. Day,* 124 Neb. 316, 246 N. W. 490.

We derive from the evidence that Henry Harrold was born in England December 21, 1844. He died September 8, 1930, and therefore was about 85 years old when the mortgages in question were made. He was a man of good mind, strong will, kindly, and of few words. He was hard of hearing and his eyesight was poor. Eliza Harrold was born April 20, 1852, and died November 4, 1930. Her qualities evidently well complemented those of her husband. For years they had lived in Kearney in a residence owned by her and which she was opposed to mortgaging. Henry Harrold had two or possibly three "strokes;" the evidence is hazy as to the exact number. The first was in October, 1927, the last was evidently in November, 1928. After the first one Mrs. Harrold looked after the drawing of checks to pay household bills and expenses. Some time after that Edith Johnson, a married daughter, was given a power of attorney and for a time looked after the financial affairs of her parents. This arrangement probably grew out of a petition to have Henry Harrold placed under guardianship, which, after a hearing, was denied (to which we attach no evidential value in deciding this present issue). In the spring of 1929 Harry J. Harrold superseded Edith Johnson in handling the business affairs of his father and mother.

Both mortgages were secured through L. T. Osborn, a real estate agent of Gibbon. Early in July, 1929, Harry J. Harrold approached the agent in his office and talked about the loan. On July 6, 1929, the agent went with Harry to the home of his parents and received an application for a $2,000 loan on the farm. There were present Harry J. Harrold, Gordon Harrold (another son), Henry

Harrold and Eliza Harrold. Henry Harrold suggested a mortgage for $2,000 on 80 acres, but Mr. Osborn explained that the company would not be so likely to grant so low a rate of interest on 80 acres as on the whole 160, so Mr. and Mrs. Harrold consented to make the application for a mortgage on the whole farm. The application was so made out and on account of his eyesight Henry Harrold instructed his son Harry to sign it for him. The application was sent in to the Omaha National Company and in a few days the prepared notes and mortgage were received for execution. They were signed by Henry Harrold and Eliza Harrold. The same parties were present as when the application was signed. The mortgage was read and explained to them. They sat up at the table and signed the notes, the coupons and the mortgage, Mrs. Harrold signing first and Mr. Harrold above her name. After the money was received the Harrolds signed a receipt for it.

On December 26, 1929, Henry Harrold signed an application to the Omaha National Company for the $4,750 loan. The evidence shows a note for that sum with 10 interest coupons and a mortgage on the farm, all signed in the handwriting of Henry Harrold and Eliza Harrold. The notes and coupons were also signed by Harry J. Harrold and Gordon Harrold. These two also signed the mortgage by mistake and the mortgage was returned and a new one executed with their names omitted. This was executed with the same people present as before, except that Gordon was not there. The conversation and the acts of Henry Harrold at the time of the execution of these notes and mortgage in foreclosure convey no idea that he did not understand just what he was doing. He was rather feeble physically, but he was dressed on all the occasions. Mr. Osborn testified that he was competent. Mrs. Harrold and Gordon Harrold were dead at the time of the trial.

The trial court consciously admitted a great deal of incompetent evidence in the belief that it did no harm in an equity case and that it could be sifted out by the court

before reaching a decision. However, there was considerable competent evidence, but perhaps on the borderline, going to the physical condition of Henry Harrold from time to time. One having been stricken as he was might have periods when his mind and memory would not be operative so as to qualify him for a business transaction like this, and yet he at other times would be fully conscious of his farm, of his need for money to pay family expenses, and of what he was doing when he made a mortgage to raise money to be used for that purpose. Lack of control of bodily functions such as existed and were put in evidence by defendants does not necessarily indicate mental infirmity so as to defeat a mortgage made under circumstances indicating that Mr. Harrold well knew just what he was doing. Mr. Osborn testified that he was competent when he signed both sets of notes and mortgages. Other witnesses presented by defendants testified otherwise, but we think their opinions were based upon his physical condition rather than upon his mental capacity. At any rate, they did not know his mental condition at the time he performed the acts in question here.

Appellees having conceded that the issue is one of incompetency, we have purposely omitted a discussion of other issues raised by the pleadings. There is no suggestion in the evidence charging either the Omaha National Company or John Hancock Mutual Life Insurance Company with bad faith or practice in any particular. Defendants have failed to sustain the burden of proof laid upon them by law. Plaintiff furnished the consideration; it was receipted for by Henry Harrold and, at least so far as plaintiff knew, went for his uses. The evidence does not clearly show otherwise. The decree was right in entering judgment for plaintiff for the amount due on its tax liens and for judgment against Harry J. Harrold, who signed the mortgage note. The judgment is reversed, with directions to enter a decree of foreclosure also for the amount due on the $4,750 mortgage.

REVERSED, WITH DIRECTIONS.

ROSE, J., took no part in the decision.