DOROTHY GENE (JEAN) LANGDON CONRY, APPELLEE, V. FRANCES RUTH LANGDON ET AL., APPELLANTS, IMPLEADED WITH CATHERINE DELPHINE KENNEDY ET AL., APPELLEES.
146 N. W. 2d 782

Filed December 9, 1966. No. 36314.

Robert T. Fortune and Leslie D. Carter, for appellants.

Dixon G. Adams, for appellee Conry.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and HASTINGS, District Judge.

HASTINGS, District Judge.

This is a partition action brought by Dorothy Gene Conry in which she seeks to confirm a five-ninths interest in the subject real estate in herself, and a two-ninths interest each in her sister Catherine Delphine Kennedy, hereinafter referred to as Delphine, and in her brother's wife Frances Ruth Langdon. Delphine and her husband failed to answer or to participate in the trial. Frances Ruth Langdon and her husband Thomas W. Langdon filed an answer admitting all allegations of the petition, and then later filed amended answers denying the full interest of the plaintiff, and alleging that a deed conveying a one-third interest from Pearl A. Langdon to her daughter Dorothy Conry was the result of undue influence exercised by the latter, and that the grantor was incompetent at the time of the execution. The trial court found generally for the plaintiff and confirmed the shares as set forth in the petition. Defendants Frances and Thomas W. Langdon bring this appeal attacking the judgment as being contrary to the law and not sustained by the evidence. For the purposes of this appeal, the plaintiff and appellee Dorothy Gene Conry will be referred to as Dorothy, and the defendants and appellants Frances Ruth Langdon and Thomas W. Langdon as Frances and Thomas; and Pearl A. Langdon as Mrs. Langdon.

Mrs. Langdon, a widow, was the mother of Dorothy, Delphine, and Thomas. As a result of their husband's and father's death in 1930 they became the fee owners of the east half of the southwest quarter and Government Lots 1 and 2 of the southwest quarter of Section 20, Township 13 North, Range 10 East, Sarpy County, Nebraska, Mrs. Langdon holding a one-third interest and each of the children a two-ninths interest. On January 14, 1942, Thomas conveyed his share in the real estate to Frances.

Frances and Thomas lived in Mrs. Langdon's house in Omaha from 1937 to 1965. They never paid her any rent, and although Mrs. Langdon also lived there until November of 1963, she had her own money, and as a matter of fact, according to Frances' testimony: "She bought the groceries and did some repair on the home and paid her drug bills and helped in ways like that." In November of 1963, Mrs. Langdon was accidentally burned, and from that time until her death on March 31, 1965, spent most of her time in Clarkson Hospital and in Booth Memorial Hospital, a nursing home.

On March 19, 1964, while confined in Booth Memorial Hospital, Mrs. Langdon executed and delivered to Dorothy a quit claim deed conveying all of her interest in the subject property. The deed was prepared and its signing acknowledged by Maurice F. Langdon, who was identified as Mrs. Langdon's attorney, and who bore some family relationship to her not explained in the record. The deed was duly recorded in Sarpy County the next day.

This action was commenced by the filing of the petition on February 9, 1965. Dorothy, the plaintiff, was represented by Maurice F. Langdon, who died on February 24 or 25, 1965.

At the trial in the district court, evidence was adduced from two nurses, proving execution and delivery of the deed, and making out a prima facie case of mental competency on the part of Mrs. Langdon.

Frances called as witnesses herself and two of her adult children. They all testified that Mrs. Langdon was childish, senile, and forgetful, but that she knew all of them. There was also evidence to the effect that Dorothy handled Mrs. Langdon's affairs during the 2 years preceding her death.

Evidence introduced by Dorothy included testimony by her, her two children, two nurses, and Mrs. Langdon's dentist and podiatrist. They all testified that Mrs. Langdon was aware of her surroundings, strong-willed, and capable of managing her affairs.

This being an appeal in an equity action, the statute requires this court, in determining questions of fact, to reach an independent conclusion without reference to the findings of the district court. However, if there is an irreconcilable conflict in a material issue, this court will, in determining the weight of the evidence of witnesses who appeared in court to testify, consider the fact that the trial court observed them and their manner of testifying.

In Kucaba v. Kucaba, 146 Neb. 116, 18 N. W. 2d 645, this court said: "As stated in Little v. Curson, 114 Neb. 752, 209 N. W. 737: 'Where it is sought to cancel a deed for the want of mental capacity of the grantor to make the instrument, the burden of proof is on the one who alleges the mental incapacity.' * * * 'In order to vacate a deed on the ground of mental incapacity of the grantor, it is necessary to show such a degree of mental weakness as renders the maker of the deed incapable of understanding and protecting his own interest. The mere circumstances that the mental powers have been somewhat impaired by age or disease is not sufficient, if the maker of the deed still retains a full comprehension of the meaning, design and effect of his act, * * *.' Brugman v. Brugman, 93 Neb. 408, 140 N. W. 781." Suffice to say that Frances has fallen short of meeting this burden, and to the contrary, the evidence affirmatively

supports a finding of competency on the part of Mrs. Langdon.

The next issue is the question of undue influence. The general rule is that the burden of proof in any cause rests upon the party who asserts the affirmative of an issue, in this case, on Frances. However, when a party upon whom the burden rests establishes facts which show the relationship of the parties and their dealings to be such that a presumption of undue influence arises therefrom, the burden of going forward with the evidence devolves upon the grantee to show the bona fides of the conveyance. "In any such case where confidence is known, or may reasonably be expected to exist as a fact, where it is of a legal, moral, social, domestic, or personal character, equity will scrutinize the transaction critically, and especially so where age, infirmity, and instability are involved, to see that no inequitable action has been taken and no injustice has occurred. * * * When a party seeking to set aside a conveyance because of undue influence establishes facts which show the relationship of the parties and their dealings to be such that a presumption of undue influence arises therefrom, the burden of going forward with the evidence then shifts to the party seeking to sustain such a conveyance to overcome such presumption." Cunningham v. Quinlan, 178 Neb. 687, 134 N. W. 2d 822.

"Not all influences will avoid a deed. Influences which arise out of the affection, confidence and gratitude of a parent to a child, and inspire a gift, are natural and lawful influences and will not render such a gift voidable. It is otherwise, however, where influences have been such as to confuse the judgment and control the will of the donor. If the act done is not the act of the donor himself but is simply carrying out the will of another, then that is an undue and unlawful influence and will avoid acts done on account thereof." Broeker v. Day, 124 Neb. 316, 246 N. W. 490.

In this case there is a total lack of evidence showing

any urging by Dorothy to secure the execution of the deed. As a matter of fact, the evidence shows that the transaction was handled exclusively by Mrs. Langdon and her attorney. There is evidence that in return for the conveyance, Dorothy was to sell the property if it became necessary to do so, in order to pay her mother's medical bills. Frances complains that Dorothy has paid none of these bills. However, the obvious answer to that is found in the testimony of Dorothy, in response to questions put to her by Frances' attorney. "A. I used her cash as far as it would go and now I don't have any, very little. Q. When you accepted that deed you accepted it on the theory that you were going to sell the property and pay your mother's expenses, didn't you? A. When the deed was signed I promised my mother that we would hold onto the property as long as possible, it was important to her. This last piece of land was very important to her. Q. Then what were you to do with the money when it was sold? A. Well, as I have said before, I would have used the money for her care, as long as she needed it, anything left over was to be mine. Q. And so with that in mind you filed that partition action, is that correct? A. We filed a partition action to get something going so, I had hoped, that we could have gotten this all done before my mother passed away, it was unfortunate Monty died when he did, I mean, I just did what people advised me to and what my mother wanted me to." It appears from the evidence that what Dorothy has done was to take the necessary steps to carry out the express wishes of her mother, and that she has satisfactorily rebutted any presumption of undue influence which might have arisen by reason of their personal relationship.

We therefore find that Mrs. Langdon was competent to execute the deed and was not subjected to undue influence, and Dorothy was entitled to have the shares in the real estate confirmed as alleged in her petition. The trial

court having come to the same conclusion, its judgment is affirmed.

AFFIRMED.