JOHANNES MYRON SCHOLTING, A MINOR, BY MILDRED
SCHOLTING, HIS LEGAL GUARDIAN, APPELLANT, V. MELVIN
R. SCHOLTING ET AL., APPELLEES.

164 N. W. 2d 918

Filed February 7, 1969.   No. 37025.

Dixon G. Adams, for appellant.

Chambers, Holland, Dudgeon & Beam, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and WALTER H. SMITH, District Judge.

NEWTON, J.

This is an action brought by Mildred Scholting, guardian of Johannes Myron Scholting, a minor, against Melvin R. Scholting and Lola Scholting, husband and wife, praying that two deeds from Johannes F. Heuck to defendants conveying the north one-half of the northeast quarter of Section 32, Township 13 North, Range 11 East of the 6th P.M., in Sarpy County, Nebraska, be canceled and set aside. It is alleged that at the time of the execution of the two deeds, the grantor was mentally incompetent and that the deeds were obtained by means of undue influence exercised upon the grantor by the defendants and other persons. The trial court found in favor of the defendants and plaintiff has appealed.

There is no contention made in this court that the grantor was mentally incapable of making a valid conveyance, but it is contended that by reason of age, his mental and physical faculties had deteriorated to the extent that he was susceptible to undue influence, and that the deeds were the result of such influence.

Johannes F. Heuck owned 320 acres of land in Sarpy County and in addition thereto, he owned an undivided one-half interest in an additional 400 acres of land, the

remaining half interest in said land being owned by Mildred Scholting. Johannes F. Heuck died February 2, 1966, at the age of 88 years. He had no children, but in 1911 he had married Mathilda Scholting, a widow with four children, namely Henrietta Scholting Alley, who died in 1949, Freda Scholting Alley, Melvin Scholting, a defendant herein, and LeRoy Scholting, who was the husband of Mildred Scholting and the father of the plaintiff Johannes Myron Scholting and of Edwin Scholting, a minor plaintiff in a companion case. LeRoy, Melvin, and Mr. Heuck all lived on adjoining quarter sections. Mathilda Heuck died in 1948 and prior to her death conveyed to her son LeRoy the quarter section of land on which LeRoy and his family resided down through the years to the present time. The conveyance was subject to a life estate vested in Mr. Heuck. Henrietta Scholting and Freda Scholting married and left home. As mentioned, Henrietta died in 1949. Freda and her husband moved to the State of Arizona in 1950 where they resided until the spring of 1962. They then returned to Sarpy County where they remained until after the death of Mr. Heuck at which time they returned to the State of Arizona. Melvin, although residing on an adjoining farm, was apparently busy with his own affairs and had little contact down through the years following his mother's death with Mr. Heuck. LeRoy and his family maintained a close relationship with Mr. Heuck and this relationship was continued by the family even after LeRoy's death. The family consisted of LeRoy's wife Mildred and seven children. Mr. Heuck was lame due to an ankle injury, walked with a cane, and retired from farming at a comparatively early age. After the death of Mrs. Heuck, LeRoy's family, down through the years until 1962, were in close contact with Mr. Heuck. They assisted him with any small chores that he had to do, mowed his lawn, maintained and installed improvements for him on his various farms, drove him about, for many years took him to a doctor, at

first twice a week and then once a week, did his telephoning for him, got his mail, took him to family affairs, assisted him in the transaction of various business matters, and were generally helpful in all matters pertaining to his personal or business requirements. As the years progressed, Mr. Heuck became very hard of hearing, suffered from a heart condition and edema which increasingly resulted in a swelling of his feet and ankles and made it more difficult for him to get about. One or two of the LeRoy Scholting children went over and stayed with Mr. Heuck each night for many years.

In the late fall of 1961, Mr. Heuck became ill and was taken to an Omaha hospital where he remained for a short time after which, as a result of his then condition of health, Mildred Scholting arranged for his admission to the Ashland Nursing Home. There Mrs. Scholting and her children visited him at least once a week and continued to look after his business interests for him. To facilitate this, he executed a power of attorney to Mildred Scholting authorizing her to handle his business affairs. He did not complain about conditions in the nursing home, but did display some degree of homesickness and a desire to return to his farm home. In May of 1962, Freda Alley returned to Nebraska and began to visit with Mr. Heuck. She encouraged his desire to return to his farm home and apparently promised to bring this about. In September of 1962 Mrs. Alley removed Mr. Heuck from the Ashland Nursing Home and the two of them moved into Mr. Heuck's farm home where Mrs. Alley's husband joined them a short time later. There they resided until December 1964 when Mrs. Alley had Mr. Heuck placed in a nursing home in Seward, Nebraska. He remained at the Seward home until his death on February 2, 1966, and in a comparatively short time thereafter, Mr. and Mrs. Alley returned to Arizona.

After the return of Freda Alley in May of 1962, Mr. Heuck displayed increasing hostility toward Mildred

Scholting and her family with the exception of Johannes Myron Scholting and Edwin Scholting, the two younger boys who had been close to Mr. Heuck throughout their lives and who continued to visit him until his death. Freda Alley, for reasons not clear, disliked Mildred Scholting and gave her to understand that she was not to come to the Heuck farm home after Freda made her home there with Mr. Heuck. Freda looked after Mr. Heuck at the farm home until he was placed in the Seward nursing home and until his death; and she assisted in the transaction of his business affairs. One of the older Scholting boys had been farming Mr. Heuck's home farm as a tenant. After Freda's arrival, this tenancy was canceled and the lease was given to a son-in-law of Fredas and then to individuals who were not related.

The record contains numerous exhibits. On August 5, 1948, Mr. Heuck executed a will wherein he bequeathed $1,000 to a niece, $3,000 to a brother, $4,000 to Melvin, a defendant herein, $500 each to two daughters of Freda Alley, $1,000 and two lots in Springfield, Nebraska, to Henrietta Alley, and the remainder of his property to his stepson LeRoy Scholting. On June 5, 1962, he executed another will wherein he bequeathed to defendant Melvin Scholting the sum of $3,000, $1,000 to Freda Alley, the Springfield, Nebraska, lots to the daughter of Henrietta Alley, $1,500 to a sister, $1,000 to a brother, and the remainder of his property was devised to Mildred Scholting, wife of his stepson LeRoy. On July 31, 1962, Mr. Heuck executed another will wherein he bequeathed the sum of $3,000 to his stepson Melvin Scholting, devised 240 acres of land to Freda Alley, the Springfield, Nebraska, lots to a daughter of Henrietta Alley, $1,500 to a sister, $1,000 to a brother, the south half of the northeast quarter of Section 32, Township 13 North, Range 11 East of the 6th P.M., to Edwin Scholting, a son of LeRoy, and the remainder of his estate to Johannes Scholting, another son of LeRoy,

and the minor plaintiff herein. This will has been admitted to probate. On July 31, 1964, Mr. Heuck executed two deeds in each of which he retained a life estate. In the first deed, he conveyed the northeast quarter of Section 32, Township 13 North, Range 11 East of the 6th P.M., in Sarpy County, Nebraska, to the defendants Melvin R. Scholting and Lola Scholting as joint tenants. In the second deed, he conveyed the east half of the northwest quarter of Section 17 and the northwest quarter of Section 20, Township 13 North, Range 11 East of the 6th P.M., in Sarpy County, Nebraska, to Freda M. Alley and Pearl M. Alley, wife and husband, as joint tenants. Prior to this date, similar conveyances had been made by him. On October 11, 1962, he had conveyed the south one-half of the northeast quarter of such Section 32 to the defendants Melvin R. Scholting and wife as joint tenants and on November 9, 1962, by another deed, conveyed the north one-half of the northeast quarter of said Section 32 to the same parties. On October 8, 1962, he had executed a deed conveying to Freda Alley and her husband, as joint tenants, the same land that he subsequently reconveyed to them in the deed of July 31, 1964. These deeds were also subject to a life estate, retained by the grantor. The only consideration paid for any of these conveyances was $1.

Some of the land conveyed by the deeds above mentioned had been owned in severalty with Mildred Scholting and in order to dispense with her interest therein, this land was divided by an exchange of conveyances during November 1962 and March 1963.

The record does not disclose any undue influence to have been exercised by the defendants on Mr. Heuck, the contention being that the conveyances by him were the result of undue influence exercised by Freda Alley on her stepfather Mr. Heuck. Mr. Heuck had by these conveyances conveyed all of the real estate that he owned, with exception of the lots in Springfield, Nebraska, and the estate has few, if any, assets, the re-

sult being that these conveyances have from a practical standpoint, nullified the will which has been admitted to probate.

On June 2, 1962, Mr. Heuck signed a petition requesting the appointment of Mildred Scholting as conservator of his estate. Objections to the appointment of Mildred Scholting were filed by Freda Alley and thereafter, on July 2, 1962, one Otto Nielsen was appointed as conservator. On September 27, 1962, Mr. Heuck filed a motion requesting that the conservator be discharged and a preliminary order of discharge was entered on October 3, 1962, but a final order was not entered until January 8, 1964. On January 28, 1965, another petition was executed by Mr. Heuck requesting that Freda Alley be appointed as his conservator. An agreement was entered into between Mr. Hueck and Freda Alley whereby she agreed to look after his personal and business affairs, he then being in the Seward rest home, with the understanding that Freda Alley would occupy his home farm, should have the use of the buildings and 20 acres of pasture, feed for 25 heifers, 25 calves, 25 pigs, 100 chickens, and 1 horse, and should receive payment of utility bills for the telephone, gas, and electricity. Pursuant to this petition, Freda Alley was appointed and qualified as conservator on February 3, 1965. She was discharged as such conservator on January 18, 1967.

The deposition of Freda Alley taken after she had returned to Arizona forms a part of this record. A portion of that testimony is particularly enlightening. Reference was made to Mr. Heuck's desire in 1962 to leave the Ashland Nursing Home and return to his farm home. With reference to the Ashland home, the following question was asked: "Q. So you feel that he would have done just about anything to get out of there?" The answer was as follows: "A. I think he would have and that's—like I say, if I had been trying to gyp him out of anything I could have gotten more; I could have got the whole works if I would have talked to him but I

didn't. I just didn't want it. I felt like I had enough and I felt like Melvin was entitled to some and Mildred got four hundred acres and I felt like she had her share, so I just felt—I would have done it because I had promised my mother before she died that we would always see that he was taken care of and I can't go back on that promise and I would have taken care of him if I didn't gotten anything, only just our utilities and a place to live." Immediately thereafter appears the following questions and answers: "Q. But you feel like if you would have tried real hard you could have got everything he had? A. If I would have just said, Grampa, I won't come unless you give me thus and so— Q. Yes. A.—in order to get out on the farm he might have consented because he wanted to go so bad."

"The elements necessary to be established in order that a deed may be set aside on the ground of undue influence are: (1) That the grantor was subject to such influence; (2) that the opportunity to exercise it existed; (3) that there was a disposition to exercise it; and (4) that the result appears to be the effect of such influence." Smith v. Black, 143 Neb. 244, 9 N. W. 2d 193. This appears to be the general rule. This being an equitable action, the cause must be heard de novo in this court and a determination made as to whether or not the attendant circumstances are sufficient to merit a finding of undue influence in accordance with the foregoing rules. We believe that such a finding is required. In 1962, when the original deeds were executed, the grantor was not mentally incompetent to execute a valid deed. He was, however, 84 years of age, in failing health and suffering from edema and a heart condition. He was lame, found it increasingly difficult to walk, and was very hard of hearing. He had a strong desire to leave the Ashland Nursing Home and return to his farm home. The strength of that desire, which is a natural one often found in elderly people, is attested to by the testimony of Freda Alley. Although Mrs.

Alley had not been close to the grantor for many years, shortly after her appearance on the scene the close relationship which had existed over a period of many years between Mr. Heuck and the family of his stepson LeRoy Scholting came to an end. She saw to it that his contacts with the members of the LeRoy Scholting family, with the exception of the two youngest children, became very infrequent. She made it known to Mildred Scholting that she was persona non grata. She soon succeeded in terminating the lease which Mr. Heuck had had for many years with one of the older Scholting boys and apparently an antagonistic feeling toward the LeRoy Scholting family developed in Mr. Heuck. No good reason appears in the record in this case to explain his change of attitude toward this family in the sense that it does not appear that any members of the family had performed any act of any kind which would warrant the antagonism Mr. Heuck developed toward all but the two younger members of the family. It seems obvious from this record and from the testimony of Freda Alley that by playing on Mr. Heuck's wish to return to his farm home, she was able to gain his trust and confidence, to take over his personal and business affairs, and to alienate him from the members of the LeRoy Scholting family, thus bringing to an end a relationship that had existed over a period of a great many years.

The evidence in this case indicates that not only did Freda Alley object to the appointment of Mildred Scholting as conservator for Mr. Heuck, but that she was dissatisfied with his having a conservator at all and influenced Mr. Heuck to bring about the discharge of Otto Nielsen as conservator. The original deeds from Mr. Heuck to the defendants and to Freda Alley were executed during the period of this conservatorship. Being somewhat doubtful under the circumstances that the deeds were valid, the later deeds conveying the same property were obtained after the termination of the conservatorship. A short time after the second set of

deeds was obtained, Mr. Heuck was placed in the rest home in Seward, Nebraska, and Freda Alley was appointed as conservator.

It is frequently difficult to prove the state of mind of one alleged to have been subjected to undue influence, but the testimony of Freda Alley would appear to make it clear that such influence did exist in the present case. The desire of the grantor to return to his farm home and his declining mental and physical condition rendered him subject to such influence. Freda Alley, who resided with him for a considerable period, certainly had the opportunity to exercise it. Her testimony, together with the evidence of the change in attitude toward the LeRoy Scholting family and the change in the disposition of his property desired by Mr. Heuck, make it apparent that there was a disposition on the part of Freda Alley to exercise such influence and that the deeds in question are the result of it.

It may be said that these defendants had nothing to do with the exercise of such influence upon Mr. Heuck, however, the antagonism of Freda Alley toward the LeRoy Scholting family and her evident desire to dictate the disposition of Mr. Heuck's property, together with the fact that she called the defendants, informed them that Mr. Heuck wanted to make a deed to them and that they should take him into town for that purpose, makes it apparent that the conveyances to the defendants were the direct result of the machinations of Freda Alley. " 'Undue influence exercised by any one, whether he or another gains by its exercise, renders the will or other instrument thus procured worthless.' " Sampson v. Sissel, 151 Neb. 521, 38 N. W. 2d 341. See, also, Woodring v. Seibold, 136 Neb. 647, 287 N. W. 75; Gidley v. Gidley, 130 Neb. 419, 265 N. W. 245.

Ordinarily, in cases of this type, the burden of proof is upon and remains with the plaintiff. This court has held on many occasions, however, that the burden of going forward with the evidence may shift to the defend-

ant.  In Kucaba v. Kucaba, 146 Neb. 116, 18 N. W. 2d
645, this court stated:  " 'Generally, the one attacking an
instrument on the ground that its execution was pro-
cured by undue influence has the burden resting on him
to establish that fact, but the circumstances under which
a conveyance is made, the condition of the grantor at
the time, and the injustice to him and his heirs, if it is
upheld, may be such as to cast upon the grantee the
burden of (evidence) showing that it is untainted with
undue influence, imposition or fraud, but is the intelli-
gent and deliberate act of the grantor.'

"Therefore, when a party seeking to set aside a con-
veyance because of undue influence establishes facts
which show the relationship of the parties and their
dealings to be such that a presumption of undue influ-
ence arises therefrom, the burden then shifts to the
party seeking to sustain such conveyance to introduce
evidence to overcome such presumption and in the ab-
sence thereof a decree should be entered against him.

"It is impossible to lay down any hard and fast rule
in cases of this kind as to when a presumption of undue
influence arises.  The rule must of necessity be applied
according to the particular facts and circumstances of
each case, in which the question arises.  It may generally
be stated that if the facts and circumstances of a case
show such a confidential, fiduciary or trust relation that
it would be inequitable to sustain the deed in question
then such presumption arises and the burden of going
forward with the evidence rests upon the grantee to
show the bona fides thereof.

"In determining whether or not the plaintiffs have
established sufficient facts and circumstances, consider-
ing the relationship of the parties, to raise a presump-
tion of undue influence, and, if so, whether the defend-
ants have rebutted it, the court will examine the trans-
action with care and closely scrutinize everything done
by the donees to secure the deed in question."  See, also,
Eggert v. Schroeder, 158 Neb. 65, 62 N. W. 2d 266; Cun-

ningham v. Quinlan, 178 Neb. 687, 134 N. W. 2d 822; Conry v. Langdon, 181 Neb. 53, 146 N. W. 2d 782.

In Conry v. Langdon, *supra*, it was stated: "However, when a party upon whom the burden rests establishes facts which show the relationship of the parties and their dealings to be such that a presumption of undue influence arises therefrom, the burden of going forward with the evidence devolves upon the grantee to show the bona fides of the conveyance. 'In any such case where confidence is known, or may reasonably be expected to exist as a fact, where it is of a legal, moral, social, domestic, or personal character, equity will scrutinize the transaction critically, and especially so where age, infirmity, and instability are involved, to see that no inequitable action has been taken and no injustice has occurred. * * * When a party seeking to set aside a conveyance because of undue influence establishes facts which show the relationship of the parties and their dealings to be such that a presumption of undue influence arises therefrom, the burden of going forward with the evidence then shifts to the party seeking to sustain such a conveyance to overcome such presumption.' "

In view of the relationship which existed between Freda Alley and the grantor named in the deeds in question and the attendant circumstances disclosed in this record, we believe that this case is one requiring close scrutiny, that a presumption of undue influence arose, and that the burden of going forward with the evidence shifted to the defendants. We find that the conveyances made to the defendants by Mr. Heuck were obtained by the undue influence of Freda Alley and that the judgment of the district court must be reversed and the cause remanded.

REVERSED AND REMANDED.

WALTER H. SMITH, District Judge, not participating.