STATE BANK OF BEAVER CROSSING, APPELLANT, V. WILLIAM H. MACKLEY ET AL., APPELLEES.

FILED APRIL 10, 1931. No. 27567.

*Harry R. Ankeny* and *Frank Kelley,* for appellant.

*Squires, Johnson & Johnson* and *Sullivan & Wilson,* contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ.

GOSS, C. J.

This is a suit in equity, brought as a creditors' bill, by a judgment creditor to set aside, as fraudulent, conveyances of real and personal property to members of the family of William H. Mackley, the debtor, and by them to others, subsequent to the incurring of the debt upon which the claim of the creditor is based; for a decree that title to the property is in William H. Mackley and to subject it to plaintiff's judgment. Plaintiff appeals from a decree rendering judgment for defendants and dismissing its petition.

The record, the evidence and the briefs, though they are able and helpful, are unusually voluminous, as might be expected in a suit of this nature, covering so much land, so divided up, so conveyed and so mortgaged, and setting forth the history of so many persons dealing with it for more than 40 years; even to state the salient facts and conclusions will take much space, and to give them in full detail would extend an opinion beyond all reasonable bounds.

The judgment against William H. Mackley, upon which plaintiff based its suit, was for $10,179.83, with 10 per cent. interest from February 12, 1929, with costs, entered September 12, 1929, in accordance with a mandate from this court in a suit between these two parties after extended and continuous litigation begun on March 3, 1922. But the debt between them was first evidenced by Mackley's note for $5,000 in favor of Sarvis Lumber Company, dated June 20, 1919, due in one year, and purchased by plaintiff June 19, 1920, a day before it was due. It was renewed on December 20, 1920, and again on April 29, 1921, at which time Mackley executed to plaintiff one note for the $5,000 principal and one for $745 for interest due. It was upon these notes, due August 29, 1921, the original

suit between the plaintiff and William H. Mackley was brought and the judgment was obtained. That the defendant William H. Mackley is a judgment debtor thereon and the plaintiff is his judgment creditor is fully adjudicated. Whether, in the meantime, after the debt was created, Mackley conveyed his property to other defendants to hinder and delay plaintiff is the gist of this action.

Mackley had filed a homestead entry on the southeast quarter of section 5, township 15, range 25, in the eighties and proved up and got his patent from the government about 1898. It is on the table-land and about nine miles south of Arnold, in Custer county. He was married in January, 1891, and from that time this quarter section has been the homestead of himself and wife, Rose B. Mackley. They weathered the hard years of the nineties on this homestead. Their children were born there, Margaret on December 3, 1891, Elizabeth on January 26, 1894, Mary on October 4, 1895, and Anna (now Mrs. Faherty) on December 27, 1899. Rose B. Mackley and these daughters, with the husband of Anna, who married, are among the defendants. Another daughter, Agnes, was born in 1893, but she died and was buried on the farm. A son, James, was born November 1, 1897, another, John, was born January 7, 1902, and the last, Edward, was born August 24, 1906. The sons are not parties.

From time to time other land was acquired until the holdings, in addition to the original homestead, included all of section four and the north half of section nine. Reference to a township map will show that this makes a compact body of 1,120 acres, the six quarter sections in sections four and nine making a rectangle and the original homestead in section five being just west of the middle of the rectangle.

February 20, 1920, William H. Mackley and wife mortgaged all of section four and the northwest quarter of section nine to the United States Trust Company for $25,-000. This mortgage was recorded March 24, 1920, and is not affected by the proceedings.

The evidence shows, without objection, the following other conveyances and mortgages of these lands: March 8, 1920, William H. Mackley deeded the southeast quarter of section five to Rose B. Mackley, his wife, and the deed was recorded May 25, 1920; on May 13, 1921, Mackley and wife deeded the north half of section nine to their daughter Margaret Mackley, deeded the northeast quarter of section four to their daughter Anna Mackley (now Faherty), deeded the northwest quarter of section four to their daughter Mary Mackley, deeded the south half of section four to their daughter Elizabeth Mackley, and these four deeds were recorded May 16, 1921. The consideration recited in each deed to the wife and daughters was one dollar and love and affection. Each deed to the daughters recited that the land was free from incumbrance except a mortgage for $25,000 on that and other lands, and the particular deed to Margaret was stated to be subject, also, to another incumbrance for $10,000. On June 1, 1928, Anna Faherty (formerly Anna Mackley) and her husband deeded the said northeast quarter of section four to Margaret Mackley, subject to the $25,000 mortgage, and this deed was recorded June 4, 1928. On September 11, 1928, Mary, Margaret and Elizabeth Mackley gave a mortgage for $10,000 (subject to the one for $25,000) to Arnold State Bank, a defendant herein, on all of section four and the northwest quarter of section nine and this mortgage was recorded September 13, 1928. On February 25, 1929, Mary, Margaret and Elizabeth Mackley gave a mortgage for $7,150 (subject to a first mortgage for $25,000 and a second mortgage for $10,000) to their uncle, James M. Mackley, of California, a defendant herein, on the same five quarter sections as in the Arnold State Bank mortgage last above; and on the same day, the same parties, joined by Anna Mackley Faherty, gave a chattel mortgage for $7,150, on certain described cattle, to James M. Mackley. This was filed March 6, 1929. Mary Mackley testified that the reason for this chattel mortgage for the same amount as the real estate mortgage was that Anna had not signed the real estate mortgage but was subject

to the same debt of the other sisters and that these cattle belonged to the makers of the mortgage.

The evidence also shows, without objection, that on April 1, 1921, William H. Mackley gave to James M. Mackley a chattel mortgage for $3,000 on 73 head of cattle and 12 work horses, described as in grantor's possession on section 5, township 15, range 25, Custer county, and this was duly filed May 16, 1921; and that on May 13, 1921, William H. Mackley executed to Rose B. Mackley, named as grantee, in consideration of $3,000, a bill of sale of 40 head of hogs, all farm machinery and tools, all grain and his share of planted and growing crops on said southeast quarter of said section five and on said sections four and nine. This bill of sale was filed May 16, 1921. Mrs. Mackley testified that she never bought any of the items described, never knew anything about the bill of sale, and that it was never delivered to her.

The mortgage of the defendant Arnold State Bank, dated September 11, 1928, heretofore referred to as for $10,000, stated that consideration and described a note for that sum. The note is in evidence and is for that amount, but it bears an indorsement of a credit of $4,900 as of September 11, 1928. The cashier of the bank testified that the girls were wanting to get more money, but after the mortgage was negotiated he did not care to go further with it and so the note was credited with $4,900, leaving the debt and mortgage $5,100, which was what they already owed the bank except about $160 which was loaned at the time. On cross-examination he explained that part of the indebtedness to the bank was in the form of notes by William H. Mackley, but it was arranged with the girls and Mr. Mackley to take all the indebtedness up with this mortgage. The bank knew of the deeds of lands to the girls more than seven years earlier and considered the mortgage as security for the "indebtedness of the outfit out there—of the outfit, the Mackley folks."

The evidence clearly shows that the southeast quarter of section five has continued to be the home of William H. Mackley and Rose B. Mackley from the time she went

there as a bride in 1891. The improvements were very meager until some years after the government patent was received in 1898. Mrs. Mackley testified that, with the aid of a small amount of money she received from her mother's estate and other money she had made and saved, she paid off a small claim against the place and bought the lumber for a new house 18 by 28, which was built on the land about two years after they got their patent. · The total cost was about $600. She said her husband had wanted to give up the place, as others in that community were doing, but she was unwilling because one of her children was buried there; that he had promised to deed the land to her and she made these improvements on the faith of that promise; that in 1905 her husband's father, who had a fatal cancer, came there and asked her to take care of him until he died, which she did in consideration of $1,800 which he gave her, and that this money was put into an addition to the house and other improvements; that Mackley said he would deed the place to her and told everybody around there it was hers; that in 1920 her husband wanted to borrow $25,000 on other lands he had acquired, and asked her to join in the mortgage, but that she refused unless he deed this home place to her, which he then did, and she joined him in the mortgage; when she got this deed in March, 1920, she knew nothing about his indebtedness to the Sarvis Lumber Company. She knew he had six quarter sections of land and had cattle and horses and had been prosperous so far as she knew. He told her he owed his brother in California $5,000 and he had given a $10,000 mortgage to the Great American Insurance Company and he wanted the $25,000 to pay out on his land. She thought he had personal property enough to pay all his debts except the mortgages. He had always paid his debts and she had no knowledge of any fraud or any intent to defraud any one when she took this deed to the homestead.

Mr. Mackley had received a serious injury to his arm in 1892 and had not been able to do much heavy work since that time. The chief income from the land had

come from dairying. Through the years the family kept many milch cows and sold butter and milk, shipping butter in the earlier years. As the daughters grew up they became useful in caring for the cows and in work in the fields. By the time they became of age their father considered them as valuable as men for his purposes. The testimony shows that, as they became 18 years of age, he induced each of them to remain at home and work for definite, promised wages. Margaret Mackley became of age in 1909, Elizabeth in 1912, Mary in 1913, and Anna in 1917. (Until the act of April 20, 1921, girls reached their majority at 18. Laws 1921, ch. 247.) Margaret and Elizabeth were promised $35 a month until 1913, when Mary was promised $40 a month, and their wages were increased to a like amount, and Anna had a contract for a like wage from the time she reached her majority. One at least of the girls taught school for a time and turned her wages over to her father. They carried out their part of the contract, planting, cultivating and harvesting crops, caring for live stock, milking cows, ranging in number from 25 to 55, and assisting in domestic duties necessarily involved in the operation of a large farm. Up to the time the deeds to the lands were made their father had not paid them, and there was due them, without interest, approximately the following amounts: Margaret Mackley $5,000; Elizabeth Mackley $3,600; Mary Mackley $3,300; and Anna Mackley $1,600. At this time when the deeds were made there was on the six sections deeded to the daughters a total of $35,000 in mortgages, and the father owed about $7,175 of unsecured debts, of which the daughters had notice and which they agreed to pay. Some of these grantors knew of his note or debt of $5,000 to the Sarvis Lumber Company, assigned to plaintiff and renewed, but not to become due until August 29, 1921. Eleven competent witnesses for the defendants testified to the value of the lands in the spring of 1921 and fixed the value all the way from $25 to $45 an acre. Taking the highest valuation, it would amount to considerably less than the total wages due grantees plus the debts they as-

sumed. The experienced trial court who heard the witnesses found: "That on said date the said land was of the fair and reasonable value of $30 per acre, as disclosed by the vast preponderance of the evidence." Taking that valuation, the land was not worth the indebtedness assumed, even leaving out of view the consideration of wages claimed by the grantees to be due them.

The evidence shows that the four sisters remained on the land, operating it together, until 1927, when Anna was married and moved to a home provided by her husband, the defendant, John W. Faherty, and that thereafter the three sisters remained on the land working together. By their joint efforts they had reduced the $25,000 mortgage to $13,700 at the time of the trial and had kept the interest paid. They had also paid off more than $1,000 of other debts of their father assumed by them at the time their deeds were given them almost ten years ago.

On the facts we have outlined, the district court found that the transfer of the homestead to Rose B. Mackley was founded upon a good, valuable and adequate consideration, without fraud or intent to hinder, delay or defraud any creditor of her husband; found likewise as to the deeds to the daughters; and ordered the petition of the plaintiff dismissed.

In argument much discussion was had over the fact that the grantees in these deeds kept no books or memoranda nor took from Mr. Mackley any written evidence of promises or of his debts to them; and also that they did not exercise entire dominion over the land and transact in their own names all the business arising out of it to the exclusion of Mackley. In view of the circumstances and the relations between the parties, we do not think this is so important or controlling. It goes more to the value of their evidence than to the ultimate truth in relation to it.

The appellant complains because the wife and daughters were allowed to introduce evidence of a consideration other than one dollar and love and affection, as expressed in their deeds from William H. Mackley. Section 36-407, Comp. St. 1929, provides that the consideration for any

instrument required by the statute of frauds to be in writing need not be set forth in the instrument itself "but may be proved by any other legal evidence." Section 36-405, Comp. St. 1929, same chapter, says: "The question of fraudulent intent in all cases arising under the provisions of this chapter shall be deemed a question of fact, and not of law, and no conveyance or charge shall be adjudged fraudulent, as against creditors or purchasers, solely on the ground that it was not founded on a valuable consideration."

In *Columbia Nat. Bank of Lincoln v. Baldwin*, 64 Neb. 732, a creditors' bill case, it was held: "Where a deed is assailed by third parties as fraudulent, and proof by them is introduced to impeach the recited consideration, the grantee may show by parol evidence the actual consideration, though different from the one recited in the deed."

In *Wells v. Aufrecht*, 96 Neb. 402, this court held that, where the consideration expressed in an instrument forms no part of a promise to pay but is only the recital of a fact, the true facts as to the consideration may be proved by parol.

In the recent case of *American Surety Co. v. School District*, 117 Neb. 6, it is said, citing numerous cases, that this court is thoroughly committed to the doctrine, which it expressed in the syllabus as follows: "The rule excluding parol evidence to vary or contradict a written instrument applies only between the parties to such instrument and those claiming under them. It has no application to controversies between a party to the instrument on the one hand and a stranger to it on the other." The district court was right in allowing parol testimony to be received and in relying thereon under the well-established rule in this state, so as to ascertain the true consideration for the deeds involved.

As to the homestead, deeded to Rose B. Mackley; the district court found, and, without reciting at length the testimony relating to the subject, we are of the opinion that the finding was justified, that Mrs. Mackley made the contribution and advancements of her own money for the

improvements on the homestead upon the promise of her husband, and her reliance thereon in good faith, that he would convey the land to her; that he was not then in debt to any material extent; that the land, exclusive of the improvements which she had paid for, was not worth to exceed $2,000; that ever since not later than 1907, when she provided most of the money for the improvements, she was the equitable owner, and since she received the promised deed therefor on March 8, 1920, she has been the absolute owner thereof. She was in possession of the homestead at all times involved, and plaintiff was bound to take notice of her ownership and interest in the land.

It is proper to say, also: "The homestead of a debtor and his family is not subject to the claims of his creditors, and fraud cannot be predicated upon the transfer of the homestead interest by the debtor to his wife." *McCormick v. Brown*, 97 Neb. 545. See, also, *Smith v. Neufeld*, 61 Neb. 699; *Jayne v. Hymer*, 66 Neb. 785; *Herring v. Whitford*, 119 Neb. 725.

With respect to the deeds to the daughters, the situation differs little from that of the mother, except in the latter case the land deeded was the actual homestead. The girls were creditors of their father. They were not creditors subsequent in point of time to plaintiff, if that makes any difference, but the promise to pay them wages was earlier than the debt on which plaintiff relies, and they had performed before the evidence of plaintiff's debt matured. The property of an insolvent debtor is not a trust fund in the hands of the debtor in favor of creditors "which interferes with a *bona fide* sale of it by the debtor." *Crites v. Hart*, 49 Neb. 53. "The essential thought running through all our cases bearing on this question is that to make a conveyance a fraudulent transfer, a fraudulent intent participated in by both parties to the transfer must exist. In the absence of a mutual fraudulent intent, the law does not interfere with the right of a person, be he solvent or insolvent, to make such disposition of his property, based upon a valid consideration, as his judgment dictates." *Farmers & Merchants Nat. Bank v. Mosher,*

63 Neb. 130, 135. Under section 36-405, Comp. St. 1929, not only is the question of fraudulent intent a question of fact, and not of law, but we agree with the district court that the grantees in the deeds paid William H. Mackley a valuable consideration for all they obtained thereby. Even if Mackley intended to defraud appellant, the daughters did not. On their part at least there was no mutual fraudulent intent. They took by their deeds only what was due them as creditors.

Appellant's brief mentions the fact that the decree did not make any specific reference to the $3,000 chattel mortgage made by William H. Mackley to James M. Mackley on certain cattle and horses, dated April 1, 1921, and recorded May 16, 1921. Plaintiff pleaded this as one of the fraudulent transfers and introduced the chattel mortgage in evidence. Under section 36-303, Comp. St. 1929, a chattel "mortgage shall cease to be valid as against the creditors of the person making the same, or subsequent purchasers or mortgagees in good faith, after the expiration of five years from the filing of same or copy thereof." Appellant points out no evidence, as required by our rules, nor do we find any, as to whether or not this personal property is still in existence. We are not advised as to whether it may or may not be levied on as the property of William H. Mackley, irrespective of this creditors' bill. The district court's decree found generally in favor of the defendants and against the plaintiff. We cannot say that the court erred, nor do we think it necessary in the circumstances to consider the particular subject further.

Many other propositions of law are argued in the briefs. We think those we have presented and decided are controlling. The decree of the district court was right as to the title of Rose B. Mackley to the home and as to that of the daughters to the six other quarter sections. The conveyances thereof were not fraudulent as to appellant.

The district court found that the mortgages made to the Arnold State Bank and James M. Mackley by the respective grantors were valid liens. Inasmuch as these grantors have not cross-appealed, and as they had title to the lands

so mortgaged, free from any claim of plaintiff, under the conclusions arrived at in this opinion, the decree should be affirmed as to these matters. The district court decreed that the bill of sale of the personal property from William H. Mackley to his wife should be canceled and set aside. This, too, was correct, for the evidence showed that it had never been delivered to or accepted by the wife.

For the reasons stated, the judgment of the district court is

AFFIRMED.