WILLIAM A. EHLERS, APPELLANT, V. MARTHA SEIP ET AL., APPELLEES.

287 N. W. 202

FILED JULY 21, 1939. No. 30610.

*William A. Ehlers* and *H. G. Greenamyre*, for appellant.
*Jack Koenigstein* and *M. S. McDuffee, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.

This is an action in the nature of a creditor's bill, asking that a deed made by parents to their minor children be declared made without consideration, fraudulent, and void, as having been made to hinder and delay creditors, and to subject the premises to payment of a judgment against the mother. The defense is that, when Mrs. Seip gave the note upon which the judgment sought to be collected was based, the real estate involved was not owned by her, as the records disclose, and also that she received no consideration for signing the note. The trial court found for defendant, and dismissed the action. Plaintiff appeals.

The evidence discloses that William Seip, now deceased, was a farmer, who lived on a quarter-section owned by his wife, and the loan on this homestead was foreclosed by the Stuart Investment Company the day before she testified in court in the case at bar. To carry on his cattle-feeding operations, Mr. Seip was compelled to borrow $800 from the Farmers Bank of Battle Creek. The note, exhibit No.

2, dated April 28, 1932, bears 8 per cent. interest, and was also signed by his wife, Martha Seip, but it did not contain a married woman's clause.

This debt was renewed, usually on payment of interest, by similar notes, on November 1, 1932, again on January 5, 1934, and was renewed the last time on June 14, 1934, at which time it was signed only by the wife. In reference to the wife alone signing this last renewal note, it appears from the evidence that the husband was sick at home. He conducted his business from a wheelchair for about six years, and then was in bed part of the last year, and died April 17, 1936. The widow was asked the question: "What was said by the banker to you about the signature of your husband, Mrs. Seip? A. He was saying when Will was able to sign again, he was very sick at that time, he would have his signature with mine again. * * * He was very sick and couldn't have nobody come in." She was asked: "Would you have signed that note alone that Mr. Ehlers brought suit upon if you had known your husband wasn't going to sign it? A. No; I don't think so."

The testimony of the cashier and of Mrs. Seip discloses that she had no intention of binding her separate estate when she signed the first note or any of the renewals thereof. She received no consideration of any kind at any time. The money was originally borrowed on the first $800 note in the fall of 1932 for feed. She testified that Mr. Seip got all the $800, and also testified: "When he shipped cattle they did not bring the money they should have, they kind of slumped."

The last renewal note, signed by the wife alone, was placed in judgment on June 13, 1935, in the county court of Madison county by B. H. Saunders, superintendent of banks in Nebraska, when he closed the Farmers Bank. This judgment was by Saunders sold and assigned to William A. Ehlers, plaintiff herein, on May 6, 1937.

The cashier was asked: "This item which is the note on which Mr. Saunders brought the action that is a continuation of the debt William Seip owed you? A. Yes, that is true."

We have given in some detail the evidence relating to the note and the judgment and assignment thereof. We will now briefly set out the evidence relating to the land which plaintiff desires to impress for the payment of this judgment. It is stated in plaintiff's brief that in July, 1931, the husband, William Seip, had received from the estate of his deceased brother an undivided one-half interest in the northeast quarter of section 8, township 21 north, range 3 west, in Madison county, Nebraska, subject to the life estate of the widow of Adam Seip. Exhibit No. 5 is a quitclaim deed, dated July 9, 1931, and acknowledged by William Seip, sole grantor, before Ernest L. Reeker, county judge, on the same day, by which William Seip transferred this same tract of land to his wife, Martha Seip, as grantee, and the annotation on the back shows that it was filed for record in the office of the register of deeds on July 18, 1931, and in lead-pencil at the bottom appear these directions: "Chg & Ret E. L. Reeker Chg 1.00."

The defendant Martha Seip testified positively that she never, at any time, knew anything about this quitclaim deed having been made, or put on record in her name, until her attorney told her about it after plaintiff brought this action against her, and that this quitclaim deed was never delivered to her. She said she was not in Judge Reeker's office when it was made out, and no one ever told her about it. Defendants insist that, as it was never delivered, it never became effective, and never transferred title to her, citing 18 C. J. 196; *Roepke v. Nutzmann*, 95 Neb. 589, 146 N. W. 939; *Brown v. Westerfield*, 47 Neb. 399, 66 N. W. 439.

Now, on the other hand, the plaintiff argues generally that, when property is conveyed to a grantee without her knowledge, the law declares an acceptance by her when the deed is delivered to her, or when such deed is recorded and she fails to repudiate it the first time she learns that fact. He further argues that Mrs. Seip recognized her ownership of this land when she joined with her husband in giving a deed of it to her minor children on March 22, 1933, and that, by reason of such fraudulent conveyance, she is now estopped

to deny the effect of it as against the creditor whom she defrauded. In reply, the defendants say that the plaintiff, being the assignee of a judgment obtained by the superintendent of banking on a note held by a failed bank, is in no position to raise the question of estoppel, as he is not in privity with either the grantors or the grantees.

This court will consider the law relating to the quitclaim deed, dated July 9, 1931, running to the wife as grantee from the husband as grantor, and of which there is no evidence that the wife ever had any knowledge until after the petition was filed in the suit at bar.

Delivery of a deed is purely a question of intent, to be determined by the facts and circumstances of each particular case. *Roepke v. Nutzmann,* 95 Neb. 589, 146 N. W. 939.

"The recording of a deed will not of itself constitute a delivery to the grantee in the absence of an acceptance by him of the instrument, but if subsequently accepted the deed will be valid." 18 C. J. 213.

In *Exsted v. Exsted,* 202 Minn. 521, 279 N. W. 554, no particular formula is necessary to the delivery of a deed, but it is sufficient if there is a surrender of the control of the deed by the grantor, together with an intent to convey title. Whether there has been a delivery of the deed is a question of fact. There is no evidence of delivery in the case at bar.

"Where the delivery of a deed is placed in issue, the burden of proof rests upon the party asserting delivery, although it need not be proved by positive testimony, but may be inferred from circumstances, or from acts and declarations of the parties constituting parts of the *res gestæ* and which show such an intention." 18 C. J. 413.

The law is clearly set out in 16 Am. Jur. 497, under the subject of "Deeds," as to delivery and acceptance of deeds. Section 108 says that one of the essentials to the validity of a deed is the acceptance thereof on the part of the grantee, with mutual intention of the parties to pass the title, and this intention of the parties is said in section 115 to be one of the essential and controlling elements. In section 128

it is said there is no delivery in law where the grantor keeps the deed in his own possession with the intention of retaining it, particularly if he keeps possession of the property as well, and that, where the proof fails to show that the grantor did any act by which he parted with the possession of the deed for the benefit of the grantee, the question of intent becomes immaterial, for if there is no evidence of an intention to part unconditionally with the deed there is no delivery. Section 135 says that, when the grantor has the deed recorded, it is *prima facie* evidence of delivery, but the actual recording does not constitute delivery as a matter of law, for the question remains whether by so doing the grantor intended to deliver the deed. No such intent appears where the recorder was expressly instructed to redeliver the deed to the grantor, or where the deed was recorded without the knowledge or assent of the grantee, for in such cases there is no ground for holding that the recorder was the grantee's agent.

Plaintiff charges that Martha Seip has been at all times since July 9, 1931, the date of the quitclaim deed to her, the real, lawful, and equitable owner of the premises sought to be applied to the judgment against her; that the minor children (Leonard being 17 and Norma 14 at the time of the trial), by their failure to appear or offer any testimony, have abandoned any claim to the property. He supports his contention with the case of *Christensen v. Smith,* 123 Neb. 388, 243 N. W. 118, in which it is said: "A deed by a father to members of his family is presumptively fraudulent as to an existing creditor and in litigation between the creditor and grantees on that issue the burden is on the latter to establish the good faith of the transaction by a preponderance of the evidence."

But on this phase of the case, this court, after considering the facts and the law, has reached the conclusion that, at the time Martha Seip signed the renewal note of her husband's debt on June 14, 1934, she had no knowledge that on July 9, 1931, her husband had conveyed any property to her; that when she signed the warranty deed with her hus-

band on March 22, 1933, to their minor children, the mere fact that her name appeared first in the deed did not conclusively prove that she knew the property had been conveyed to her by a quitclaim deed, and that she joined in said deed without fraud, or intent to defraud.

In reference to the note she signed to the bank, upon which judgment was entered, it was dated June 14, 1934, and she had more than a year before deeded her interest in this property to her children.

Where the intent of a married woman is a direct issue, it is competent for her to testify that she had no intent to bind her separate estate, such intent being in the nature of an existing fact which she knows more about than any one else, the weight of such testimony being a matter for the jury to consider. A renewal note, executed by a married woman as surety only for her husband, where no other or new consideration is shown, is subject to the same defense as the prior note. *First Nat. Bank v. Ernst,* 117 Neb. 34, 219 N. W. 798; 8 Neb. Law Bulletin, 280.

In *Harbine Bank of Fairbury v. McCune,* 131 Neb. 419, 268 N. W. 358, it is held: "A married woman's contract can only be enforced against the separate estate she possessed at the date of entering into the contract."

There is absolutely no evidence showing that, when the bank took the last renewal note signed by Martha Seip, it relied in any way upon the ownership of said property by the defendant Martha Seip.

In our opinion, neither the grantees nor the grantors had any intent at any time to defraud or delay the bank, which held the note, or the superintendent of banking, who took over the bank when it failed, or the plaintiff, who purchased an assignment of the judgment which was obtained. Therefore, the trial court was right in dismissing the plaintiff's petition. A guardian *ad litem's* fee is fixed in this court of $50, and the judgment of the lower court is hereby

AFFIRMED.

JOHNSEN, J., concurs in the result.

SIMMONS, C. J., and CARTER, J., dissent.