IDA BLACK SMITH ET AL., APPELLANTS, V. WILLIAM M. BLACK ET AL., APPELLEES.

9 N. W. (2d) 193

FILED APRIL 16, 1943. No. 31527.

*Charles A. Fisher*, for appellants.

*Edward T. Lazear* and *G. L. Nichols*, contra.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

YEAGER, J.

This is an action by Ida Black Smith and Victoria Black Lecher, daughters of Mary Ann Black, deceased, and Charles H. Loewenthal, administrator of the estate of Mary Ann Black, deceased, plaintiffs and appellants, against William M. Black, Thomas A. Black, Samuel R. Black, Maude Black Jensen, Laura Black Munkres and Anna Black Miller, sons and daughters of Mary Ann Black, and Ingeburg Martens, Sarah Carlbom, Elizabeth Mackey, Anna Lynch, Edna Walgreen, Henry Miller, Frank Miller, Clarence Miller, Raymond Miller and Mary Jensen, grandchildren of the said

Mary Ann Black, defendants and appellants, to set aside two deeds to certain lands in Dawes county, Nebraska.

In its decree the district court denied the relief prayed and the plaintiffs have appealed.

The central facts upon which this action is based are, that on October 14, 1941, Mary Ann Black executed deeds to real estate in Dawes county, Nebraska. In one plaintiffs Ida Black Smith and Victoria Black Lecher were grantees. The property described in this deed was one lot in Chadron, Nebraska, on which was the home of Mary Ann Black. In another Maude Black Jensen, Laura Black Munkres and Anna Black Miller were grantees. The property described in this deed consisted of 600 acres of land in Dawes county, Nebraska. In another Thomas A. Black, William M. Black and Samuel R. Black were grantees. The property described in this deed consisted of 599 acres of land in Dawes county, Nebraska. In still another the defendants, the grandchildren of Mary Ann Black, who were the children of her deceased daughter, were grantees. The property described was a vacant lot in Chadron, Nebraska. The action here was instituted for the purpose of vacating and setting aside the second and third of these deeds.

The grounds upon which the plaintiffs rely to have the deeds vacated and set aside are that the deeds were without consideration and were obtained through undue influence, duress, fraud and deceit of the defendant William M. Black; that at the time of making and acknowledging the deeds Mary Ann Black was not of sufficient mental capacity to make them; that there never was a delivery of the deeds within her lifetime; and that the deeds were in fraud of creditors of the deceased.

The following facts relating to the preparation, execution and claimed delivery of the deeds in question appear in the record without dispute: On or about September 2, 1941, Mary Ann Black went in an automobile from Scottsbluff, Nebraska, to Cheyenne, Wyoming. She was accompanied by William M. Black, his wife and Catherine G. Pickett. While in Cheyenne she consulted with John H.

Sedgwick concerning the drawing of deeds to her real estate. William M. Black was present at the time. She gave directions to Sedgwick as to what disposition she desired to make of the real estate. She did not have the legal descriptions with her. These descriptions were later sent to Sedgwick by the county assessor of Dawes county, Nebraska. Sedgwick drew the deeds and sent them to William M. Black who received them about October 9, 1941. On October 14, 1941, Mary Ann Black and William M. Black went to the office of G. T. H. Babcock, an attorney of Chadron, Nebraska, where Mrs. Black signed the deeds. Babcock, a notary public, took her acknowledgments. The deeds were left with Babcock where they remained until after the death of Mary Ann Black which occurred on December 23, 1941. At the time the deeds were executed Mrs. Black was past 83 years of age and her sight and hearing were impaired. The house and lot granted to the plaintiffs, Smith and Lecher, had but little value over and above the due and delinquent taxes against it; the vacant lot was of little value; the two tracts of land were estimated to be of the value of $18,000 or $20,000 and the record does not disclose that they were in anywise unencumbered. A comparatively small amount of taxes against them was unpaid.

The remaining pertinent facts are not greatly in dispute. The dispute is, for the most part, relative to the interpretation and application of undisputed and undenied facts.

The first proposition for determination in sequence is that of whether or not Mary Ann Black had sufficient mental capacity to understand, and knew what she was doing when she executed the deeds in question.

The most that has been said against a proper mental capacity to perform these acts was that she was aged and infirm, she had greatly impaired vision, she had great difficulty in hearing, she had little if any experience in business affairs, her business affairs had for a considerable period of time been handled under power of attorney by William M. Black, she was unwell, she had a roaring in her head, she was so enfeebled that she was unable to get about without

assistance except upon level surfaces, and she was unable to readily recognize persons long known to her. Whether plaintiffs are claiming that this failure of ready recognition resulted from impaired vision or from weakened mentality is not readily apparent. She had diabetes, heart trouble and high blood pressure. As against this there is no evidence of mental lapses, she traveled about in automobiles, she visited to some extent among the members of her family, she at all times fully recognized the members of her family, she conversed rationally, she had an interest in the things she saw, she discussed frequently her property and estate, she was concerned about her security, and she gave directions with regard to the disposition to be made of the deeds.

On this issue the burden of proof was on the plaintiffs, they having so charged, to sustain the lack of mental capacity to make the deeds. In the opinion in *Blochowitz v. Blochowitz*, 122 Neb. 385, 240 N. W. 586, it is stated: "The rule of law is well settled that, to set aside a deed on the ground of want of mental capacity on the part of the grantor, it must be clearly established that the mind of the grantor was so weak or unbalanced at the time of the execution of the deed that he would not understand and comprehend the purport and effect of what he was then doing." See, also, *Lund v. Woodward*, 137 Neb. 689, 291 N. W. 90.

In discussing the character of mental incapacity which must exist before a deed will be set aside on account thereof this court said in *Brugman v. Brugman*, 93 Neb. 408, 140 N. W. 781: "It is not every weakness of mind arising from old age or sickness, or other causes, that will avoid a deed. There must be a total want of reason or understanding. * * * Mere mental weakness will not authorize a court of equity to set aside an executed contract. * * * In order to vacate a deed on the ground of mental incapacity of the grantor, it is necessary to show such a degree of mental weakness as renders the maker of the deed incapable of understanding and protecting his own interest. The mere circumstance that the mental powers have been somewhat im-

paired by age or disease is not sufficient, if the maker of the deed still retains a full comprehension of the meaning, design and effect of his act."

On the matter of the approach of this court to a record coming here from the district court in an action in equity this court has said: "While the law requires this court, in determining an appeal in an equity action involving questions of fact, to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence, where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying." *Johnson v. Erickson,* 110 Neb. 511, 194 N. W. 670. See, also, *Gentry v. Burge,* 129 Neb. 493, 261 N. W. 854; *Higgins v. Adelson,* 131 Neb. 820, 270 N. W. 502; *Ohme v. Thomas,* 134 Neb. 727, 279 N. W. 480; *Fisher v. Keeler,* 142 Neb. 728, 7 N. W. (2d) 659.

In the light of the entire evidence and the observation of the witnesses the trial court found that Mary Ann Black did not lack sufficient mental capacity to make the deeds. We have found nothing upon which to base a different conclusion. The record amply sustains the finding of the trial court.

We direct our attention now to the charge that William M. Black obtained the execution of the deeds by fraud, deceit, duress and undue influence. The record is entirely devoid of any direct evidence that William M. Black influenced his mother in anywise with regard to the deeds. Moreover there is no evidence from which such an inference might be drawn. It is true that there was opportunity but nothing more. He was with her when she gave directions for the making of the deeds and also when they were signed and acknowledged but he denied specifically that he advised her in any way. He is supported in this by Sedgwick, the drawer, and Babcock, the lawyer and notary public who took the acknowledgments. There is nothing in the record to the contrary.

In *Gidley v. Gidley,* 130 Neb. 419, 265 N. W. 245, the es-

sentials of an action for undue influence were enumerated. In the third paragraph of the syllabus it is stated: "A case of undue influence is made out where it is shown by clear and satisfactory evidence (1) that the testator or grantor was subject to such influence; (2) that the opportunity to exercise it existed; (3) that there was a disposition to exercise it; (4) that the result appears to be the effect of such influence." There is in this case an absence of proof of any of these elements except the second.

The next question is that of delivery of the deeds. The facts are not in dispute. They were recited by G. T. H. Babcock and William M. Black. Following their execution, as has already been stated, the deeds were left with Babcock where they remained until after the death of Mary Ann Black. The circumstances under which they were left according to the testimony of Babcock were as follows: "And I filled out the acknowledgment on each deed and I said, 'What do you want me to do with these deeds' and she said, 'Put the deeds in your safe until I am gone and then deliver them,' and I said, 'All right, Mrs. Black, I will do that.' And she took the glasses off and put them in the case and in the handbag and stood up and she said to me, 'Don't forget that.' I said, 'No.' She said, 'That is just the way Pa wanted it,' and I said, 'All right, Mrs. Black.' And her and Bill went out the door, and I said, 'Good-bye,' and she said 'Good-bye,' and that was the end of it." William M. Black said on this subject: "She said to deliver the deeds after she was laid away." There is no evidence that she sought or desired thereafter to regain possession or control of the deeds. Did this amount to delivery within the meaning of the law?

What constitutes delivery is not an open question in this jurisdiction. In an unbroken line of decisions extending back to an early date this court has held that delivery is largely a question of intent to be determined from the facts and circumstances of the given case. In the early case of *Brittain v. Work*, 13 Neb. 347, 14 N. W. 421, it was stated: "No particular act or form of words is necessary to consti-

tute a delivery of a deed. Anything done by the grantor, from which it is apparent that a delivery was intended, either by words or acts, or both combined, is sufficient." Other cases in point are *Brown v. Westerfield,* 47 Neb. 399, 66 N. W. 439; *Roepke v. Nutzmann,* 95 Neb. 589, 146 N. W. 939; *Flannery v. Flannery,* 99 Neb. 557, 156 N. W. 1065; *Ehlers v. Seip,* 136 Neb. 722, 287 N. W. 202; *Owens v. Reed,* 141 Neb. 796, 4 N. W. (2d) 914.

The criterion upon which the question of delivery depends is as to whether or not the intention of the grantor is that the deed shall operate as a muniment of title to take effect presently, or in other words, whether or not it has passed beyond the dominion, control and authority of the maker, and is no longer capable of being recalled. The rule is stated in *Brown v. Westerfield, supra,* as follows: "Delivery of a written instrument like a deed is largely a question of intent to be determined by the facts and circumstances of the case. In the case at bar it depends on whether the intention of the grantor at the time was that the deed should operate as a muniment of title to take effect presently. * * * If such was the purpose, the delivery was complete, and the title to the property passed." To the same effect is *Roepke v. Nutzmann, supra; Huenink v. Heitbrink,* 104 Neb. 520, 177 N. W. 796; *Haecker v. Haecker,* 113 Neb. 587, 204 N. W. 72.

In *Huenink v. Heitbrink, supra,* quoting from *Paxton v. State,* 59 Neb. 460, 81 N. W. 383, this court said: "An instrument is not delivered until it has passed beyond the dominion, control and authority of the maker, and is no longer capable of being recalled."

It is not necessary that grantees shall have knowledge of the deeds prior to the death of the grantor. In *Roepke v. Nutzmann, supra,* which is a case very much like the one being considered here as to the facts, the court in the opinion propounded the following questions and gave the following answer: "Was the delivery of the deeds to the notary, in the absence of the defendants, and without any knowledge on their part of their execution prior to the death

of the grantor, with the instructions given, a sufficient delivery to render the conveyances valid? * * * Did the delivery of the deeds to the notary, with positive instructions to place them upon record upon the happening of the grantor's death, and which instructions were never modified nor countermanded, amount in law to a delivery of the deeds to or for the benefit of the grantees? * * * It is quite apparent that at the time of making the deeds it was the grantor's purpose to make a present transfer of the title for the benefit of the defendants upon the occasion of his decease. It seems to us that, whatever might be our views upon the question involved, *Brown v. Westerfield, supra,* is so nearly like the case at bar as to settle the question in favor of the grantees."

The appellants substantially urge that there was no delivery since there was no assent thereto by the grantees, assent being an essential element of delivery. The authorities cited, we think, do not support this contention. It is true that in *Ehlers v. Seip, supra,* which is a case cited, the following quotation from 18 C. J. 213, is found: "The recording of a deed will not of itself constitute a delivery to the grantee in the absence of an acceptance by him of the instrument, but if subsequently accepted the deed will be valid." We think that the most that can be said for this statement is that proof of acceptance is but one evidentiary phase by which delivery may be proved.

We conclude therefore that the evidence is sufficient to sustain a finding that the delivery of the deeds in question was complete.

A further contention is that the transfers were made in fraud of creditors. We pass over the proposition that this is not an action by a creditor, since that question is suggested but not presented, and go directly to the question of whether or not they could have in any event under the evidence been in fraud of creditors.

The defendants contend that this claim has no merit for the reason, among others, that the elements necessary to establish a fraudulent conveyance have not been shown to ex-

ist. They insist that the following rule announced in Logie v. Snyder, 129 Neb. 583, 262 N. W. 489, operates to defeat the claim: "To make a conveyance a fraudulent transfer, a fraudulent intent participated in by both parties to the transfer must exist."

The rule thus stated is too broad in its application. The effect would be to open the door to immeasurable fraud with no remedy to the sufferers except in those instances where it could be shown that there was a joinder in the fraudulent intent by the grantee. The fallacy of the rule becomes plain when it is pointed out that under it a hopelessly insolvent parent or other person could transfer his or her property to a child or children or any other person with definite and even avowed intent to defraud creditors, but no such transfer could be set aside as in fraud of creditors unless it could be shown that the grantee participated in the fraudulent intent. No deed by a parent to a child, where delivery was made effective by secretly placing it in the hands of a third person there to remain until after the death of the grantor, could ever be set aside on the ground that it was in fraud of creditors.

We here reannounce the rule as it was stated in the earlier cases and limit it as it was limited therein: "In the absence of a mutual fraudulent intent the law does not interfere with the right of a person, be he solvent or insolvent, to make such disposition of his property, based upon a valid consideration, as his judgment dictates." Farmers & Merchants Nat. Bank v. Mosher, 63 Neb. 130, 88 N. W. 522; State Bank of Beaver Crossing v. Mackley, 121 Neb. 28, 236 N. W. 165.

The contention of the defendants that the deeds were not in fraud of creditors, however, must be sustained on another ground. There is no evidence directly, or from which it might reasonably be inferred, that there was any intent on the part of Mary Ann Black to defraud any creditor. There is not, in fact, sufficient evidence to show that there were creditors who could have been defrauded. The record discloses that her entire personal indebtedness at the time

of her death amounted to $322.50, $242.50 of which was a promissory note payable to the defendant, William M. Black, which note was secured by a chattel mortgage. The balance of $80 was for doctors' bills, and it is not shown whether these were contracted before or after the execution and delivery of the deeds.

The decree of the district court is affirmed.

AFFIRMED.