778 N.W.2d 744 (2009)
18 Neb. App. 168
Phyllis COOK, Personal Representative of the Estate of Ronald D. Cook, appellant,
v.
Sonia K. HALL, Individually and as Personal Representative of the Estate of Viola W. Cook, appellee.
No. A-09-056.
Court of Appeals of Nebraska.
December 1, 2009.
*746 James Walter Crampton, Omaha, for appellant.
Eileen A. Hansen, of Smith & Hansen, Omaha, and Larry A. Duff, for appellee.
SIEVERS and CASSEL, Judges, and HANNON, Judge, Retired.
HANNON, Judge, Retired.

INTRODUCTION
Viola W. Cook, now deceased, executed and recorded a deed to her home, referred to as "Lot 4," to herself and her two children as joint tenants with right of survivorship. After Viola's death, the children listed Lot 4 for sale but did not succeed in selling it before one of the children, Ronald D. Cook, died. Phyllis Cook, as the personal representative of Ronald's estate, brought this declaratory action against Sonia K. Hall (Sonia), Viola's child and surviving grantee of Viola's deed, seeking to have the deed declared void on two theories at issue in this appeal. Phyllis alleged that the deed was not delivered and that the joint tenancy had been severed by Ronald. The trial court granted Sonia's motion for summary judgment and dismissed the complaint. Phyllis has timely appealed to this court. We conclude that under the facts in this case, Viola's recording of the deed in joint tenancy on the date it was executed created a presumption that the deed was delivered, there is no evidence to rebut that presumption, and there is no evidence that Ronald severed the joint tenancy. Therefore, we conclude there is no material issue of fact, and we affirm.

BACKGROUND
In the complaint, Phyllis alleges her appointment as personal representative of Ronald's estate. She also alleges that "[o]n or about August 29, 1986, a deed purportedly executed by Viola Cook to Sonia K. Hall and Ronald D. Cook concerning Lot 4 was filed at the Douglas County Register of Deeds and returned to Viola W. Cook, a true and correct copy of which... is attached ...." The attached deed shows Viola, Ronald, and Sonia as the grantees. Phyllis further alleges in the complaint that the deed was never delivered *747 to Sonia or Ronald and that Ronald was not aware of said deed during Viola's lifetime. In addition, Phyllis alleges that Ronald died after Viola and that prior to Ronald's death, he severed any joint tenancy which would have existed between him and Sonia. Phyllis asked the court to declare the deed void and find that Ronald's estate is entitled to a one-half interest in Lot 4.
Sonia's answer contains a general denial plus allegations that essentially support the factual allegations of the complaint, but disputes and denies the conclusion of no delivery and severance. In regard to delivery, Sonia alleges that Viola mailed to Sonia a photocopy of the recorded deed along with a document giving Sonia power of attorney over Viola's real estate decisions. Sonia further alleges that in December 2006 or January 2007, Viola told Sonia where the original deed was located, and that Sonia retrieved it shortly before Viola's death. We note that Neb. Ct. R. Pldg. § 6-1108(d) provides in part that "[a]verments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided." Phyllis did not need to respond to Sonia's allegations, and they are deemed denied.
This appeal is made more complicated by the fact that the parties did not follow Neb.Rev.Stat. § 25-1332 (Reissue 2008), which provides in part: "The evidence that may be received on a motion for summary judgment includes depositions, answers to interrogatories, admissions, stipulations, and affidavits." The bill of exceptions contains none of these types of evidence or stipulations. The bill of exceptions consists only of copies of documents which were offered into evidence and not objected to, but were also largely unexplained. The documents include (1) Viola's will, executed in 1990, leaving her estate to her two children equally; (2) a codicil to that will, executed in 2002, providing that a piece of real estate she had acquired after the execution of her will should go to her grandson; (3) the original of the deed in question; (4) a listing agreement showing that on July 19, 2007, Ronald and Phyllis listed Lot 4 for sale; (5) a listing agreement showing that on January 18, 2008, Sonia and her husband listed Lot 4 for sale; (6) a document entitled "Estimated Sellers Figures," in connection with each of the two listing agreements, showing the broker's estimate of what the sellers would realize if Lot 4 sold for the amount shown on the listing; and (7) court documents showing that Ronald and Sonia were appointed copersonal representatives of Viola's estate and that Sonia was appointed successor copersonal representative of Viola's estate after Ronald's death. The documents in the record also show that Viola died on January 24, 2007, and that Ronald died on September 29, 2007. As previously stated, the parties did not object to the admission of the documents into evidence.
The pleadings and the documents do not establish all of the facts the parties seem to assume in their briefs. The pleadings and the documents show without dispute that on August 29, 1986, Viola executed, acknowledged, and recorded a deed for Lot 4 to herself, Ronald, and Sonia as joint tenants with right of survivorship, and that the deed was returned to her. In their briefs, the parties agree that Viola lived on Lot 4 until her death on January 24, 2007, at 84 years of age. The evidence shows that Ronald and Sonia were Viola's children and that after she died, they listed Lot 4 for sale but did not contract to sell it before Ronald's death on September 29, 2007. Thereafter, Sonia and her husband listed the home for sale with the same broker.

ASSIGNMENT OF ERROR
Phyllis alleges that the trial court erred in granting summary judgment in favor of *748 Sonia because the facts in regard to delivery and severance of the joint tenancy are controverted.

STANDARD OF REVIEW
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Hauptman, O'Brien v. Turco, 277 Neb. 604, 764 N.W.2d 393 (2009).
In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Id.

ANALYSIS

Delivery of Deed.
Phyllis first contends that the trial court erred in granting summary judgment because there is a genuine issue of fact in regard to whether the deed was delivered. It is essential to the validity of a deed that there be a delivery, and the burden of proof rests upon the party asserting delivery to establish it by a preponderance of the evidence. Caruso v. Parkos, 262 Neb. 961, 637 N.W.2d 351 (2002); Brtek v. Cihal, 245 Neb. 756, 515 N.W.2d 628 (1994). To constitute a valid delivery of a deed, there must be an intent on the part of the grantor that the deed shall operate as a muniment of title to take effect presently. Id. The essential fact to render delivery effective is always that the deed itself has left the control of the grantor, who has reserved no right to recall it, and it has passed to the grantee. Id.
Sonia contends that there was delivery of the deed because the deed was recorded. For the moment, we will ignore her other allegation that she possessed the deed before Viola's death. Relying on Brtek, Phyllis asserts that "Sonia's version of the delivery does not support the vital factual conclusion that Viola's intent was relinquishing all dominion over [the deed] and of making it presently operative as a conveyance of the title to the land." Brief for appellant at 7 (emphasis omitted). The facts in Brtek are not comparable to the facts in the instant case. In Brtek, the deceased had executed a deed to the "Urbanek place" to himself and his sister as joint tenants and he then gave the deed to his mother, a woman who dominated the family. 245 Neb. at 762, 515 N.W.2d at 634. After the grantor's death, the mother gave the deed to the sister and told her the land described in it was hers. The deed was recorded a short time later. Following a trial, the court found that the deed was never delivered during the grantor's lifetime. The Nebraska Supreme Court affirmed the trial court's finding.
Phyllis also ignores an important discussion in the Brtek decision. The court noted the proposition that states: "No particular acts or words are necessary to constitute delivery of a deed; anything done by the grantor from which it is apparent that a delivery was intended, either by words or acts, or both combined, is sufficient." Brtek, 245 Neb. at 765, 515 N.W.2d at 636. The Brtek court then went on to discuss various cases where delivery was in question and the acts within these cases that showed intent to deliver. One of the cases the court discussed was Perry v. Markle, 127 Neb. 29, 254 N.W. 692 (1934). In Perry, the deed had been in the possession of one of the grantees from the time it was executed and the deed had *749 been recorded several months after it had been signed and acknowledged. The Brtek court commented on the presumption normally given when a deed is found in the possession of the grantee and observed the following about the Perry decision:
Although the syllabus of the court in Perry states that "[d]elivery of a deed by the grantor to one of several named grantees is sufficient delivery as to all," it is clear from a reading of the opinion that this was only one of several factors which were considered in reaching the conclusion that a valid delivery had been made. Perhaps of great importance were the facts relating to adverse possession and statute of limitations and the fact that the deed was recorded prior to the death of the one grantee. Recordation of a deed generally presumes delivery. Kresser v. Peterson, 675 P.2d 1193 (Utah 1984).
Brtek v. Cihal, 245 Neb. 756, 766, 515 N.W.2d 628, 636 (1994).
In deciding Brtek, the Nebraska Supreme Court also discussed Kresser v. Peterson, 675 P.2d 1193 (Utah 1984). In Kresser, the grantor executed and recorded a deed to her home naming herself and her two children as joint tenants with right of survivorship. The grantor put the recorded deed in a safety deposit box to which the two children were permitted access if they wished. The children did not know about the deed and did not have a key to the safety deposit box. In affirming the trial court's finding that there was delivery of the deed, the Kresser court said: "An effective deed requires delivery, actual or constructive, without exclusive control or recall. Recording generally presumes delivery. Delivery to one cotenant or reservation of an estate connotes delivery to all cotenants, where the grantor is also the grantee." Id. at 1194 (emphasis supplied).
The significant facts in Kresser are quite close to the facts in the present case. In the instant case, the evidence shows without dispute that Viola executed, acknowledged, and recorded the deed on the same date and had the deed returned to her. Viola remained in possession of both Lot 4 and the deed. It is significant that Viola was one of the grantees, along with Ronald and Sonia. "If only one joint tenant is in occupancy of the property, he or she must be considered as possessing, not only for himself or herself, but also for his or her cotenants, although there is no contract between them." 48A C.J.S. Joint Tenancy § 26 (2004).
It has also been held that it is not necessary that grantees have knowledge of the deed prior to the death of the grantor. Smith v. Black, 143 Neb. 244, 9 N.W.2d 193 (1943). In Smith, the appellants maintained that because the grantees had no knowledge of the deed, there was no delivery inasmuch as there was no assent by the grantees. The Smith court stated: "`The recording of a deed will not of itself constitute a delivery to the grantee in the absence of an acceptance by him of the instrument, but if subsequently accepted the deed will be valid.'" 143 Neb. at 252, 9 N.W.2d at 198. Accord Ehlers v. Seip, 136 Neb. 722, 287 N.W. 202 (1939). See 26A C.J.S. Deeds § 82 (2001). The Smith court concluded: "We think that the most that can be said for this statement is that proof of acceptance is but one evidentiary phase by which delivery may be proved." 143 Neb. at 252, 9 N.W.2d at 198.
In the instant case, shortly after Viola's death, Ronald and Sonia listed the real estate for sale, and they did so as individuals and not as personal representatives of Viola's estate. This conduct, occurring while both surviving grantees were *750 alive, clearly shows their acceptance of the benefits of the deed in question.
As previously stated, Sonia also argues, based on allegations in her answer, that a copy of the deed had been mailed to her by Viola and that she later obtained possession of the actual deed with Viola's consent before her death. This may well be the case, but there is no valid evidence on that point. There is no affidavit or other valid evidence to establish these facts and allegations in the answer. We therefore disregard any claim that either Sonia or Ronald knew about the deed or obtained possession of it before Viola's death. In the complaint, Phyllis only alleges that Ronald did not know about the deed until after Viola's death, but this does not establish that Sonia knew about the deed.
Under the status of the record, we conclude that Viola executed and recorded the deed to herself and her two children and had it returned to her and that she had possession of the deed and Lot 4 until her death many years later. Under the authority of the cases discussed above, we conclude that the deed was delivered and that there is no genuine issue of material fact in regard to delivery.

Severance of Joint Tenancy.
Phyllis next maintains that the trial court erred in granting summary judgment, because there is a genuine issue of material fact as to whether Ronald severed the joint tenancy by listing and possibly selling Lot 4 before he died. Neb.Rev.Stat. § 76-2,109 (Reissue 2003) provides: "There shall be no severance of an existing joint tenancy in real estate when all joint tenants execute any instrument with respect to the property held in joint tenancy, unless the intention to effect a severance expressly appears in the instrument." There is no document which expressly appears to effect a severance. The listing agreement does not mention joint tenancy or severance. The case of Hughes v. de Barberi, 171 Neb. 780, 107 N.W.2d 747 (1961), holds that a contract to sell real estate in joint tenancy severs the joint tenancy and the joint tenants become tenants in common. Since the Hughes case was decided in 1961 and § 76-2,109 was enacted in 1979, we are inclined to think the Hughes rule is no longer the rule. However, since there is no evidence a contract to sell Lot 4 was ever entered into, we need not spend resources determining the effect of a contract to sell.
Phyllis also argues that there is a genuine issue of fact as to whether Lot 4 was sold, thereby severing Robert's joint tenancy with Sonia. As we just stated, there is no evidence of a contract to sell Lot 4. However, Phyllis argues that a "`closing statement'" related to the listing for sale indicates that a sale may have occurred to sever the tenancy. Brief for appellant at 9. We do not find a closing statement in the documents in evidence. The evidence does contain a document entitled "Estimated Sellers Figures" found with each of the two listing agreements. Both such documents are dated the same date as their respective listing and are clearly the broker's estimate of what sellers could expect to realize after estimated expenses if the property sold for the listed sale price. There is no evidence that Lot 4 was sold, and accordingly, there is no evidence that the joint tenancy was severed.

CONCLUSION
We conclude that there are no genuine issues of material fact in regard to delivery of the deed and severance of the joint tenancy. After a movant for summary judgment has shown facts entitling the movant to judgment as a matter of law, the opposing party has the burden to present *751 evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party. Martin v. Curry, 13 Neb.App. 171, 690 N.W.2d 186 (2004). See, In re Estate of Ellis, 9 Neb.App. 598, 616 N.W.2d 59 (2000); Sindelar v. Hanel Oil, Inc., 6 Neb.App. 349, 573 N.W.2d 782 (1998); Weatherwax v. Equitable Variable Life Ins. Co., 5 Neb.App. 926, 567 N.W.2d 609 (1997); Northern Bank v. Pefferoni Pizza Co., 5 Neb.App. 50, 555 N.W.2d 338 (1996). Phyllis, as the opposing party, has failed to meet her burden. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.